We'll hear argument first this morning, Case 18-1086, Lucky Brand Dungarees v. Marcel Fashions Group. Ms. Sendali. Mr. Chief Justice, and may it please the Court, this Court should reverse the Second Circuit because it erred in holding that a defense never previously litigated to judgment can be barred in a case involving new claims. This Court rejected that idea over a hundred years ago in Cromwell and Davis, and as this Court unanimously made clear more recently in Taylor v. Sturgill, the preclusive effect of a judgment is determined by two doctrines, issue preclusion, which forecloses relitigation of issues actually litigated and resolved, and claim preclusion, which forecloses successive litigation of the very same claim. Applying these long-established principles, the proper rule is a defendant is free to issue claims. This rule is right for three reasons. First, it follows from this Court's precedent, including Cromwell, Davis, and Taylor. Second, the rule is easy to administer as courts and litigants are accustomed to applying these bedrock principles of issue and claim preclusion. Third, it's fair and protects due process interests. To be clear, we are not arguing that defenses may never be barred under existing law. Issue preclusion could bar a previously resolved offense, and previously unresolved offenses cannot be raised in the context of a judgment enforcement action or as a claim in an action collaterally attacking a prior judgment. But none of these circumstances are present here. As the Second Circuit held in the first appeal on this case, Marcell I, Marcell is pursuing new claims as it seeks relief for alleged subsequent infringement. Thus, this Court should reverse, as the Second Circuit's novel test precluded a never-resolved offense in an action asserting new claims in conflict with settled and sensible principles of claim and issue preclusion. Moreover, the Second Circuit's new test is a bad idea for the Court. to that, Ms. Zandali. Could you explain why you abandoned the release defense in the first action? You did raise it, and then you dropped it and it's a bit of a mystery why you did. We don't know exactly why it was abandoned, but the most logical answer is that it would not have been dispositive. The amount of controversy, the compensatory damages in that case was only $20,000, and we know that the release would not have applied to use of get lucky, which is what the primary thrust of what the case was about. So it may not have been worth it from a cost-benefit analysis to renew a release defense that would not have been dispositive of the issues before the Court. How would it have — it seems strange when that release said, Lucky, you can't use get lucky, but you're continuing to use it. The release said you can't use get lucky. On the other hand, we won't go after you for lucky brand. The first case, as you just said, concentrated on get lucky, and the release seemed to me to be no use at all to lucky as far as get lucky is concerned, because it agrees that it would stop using get lucky. That's exactly our point, Your Honor. Because the release would not have been helpful with regard to get lucky, it wasn't going to be dispositive of the case, and therefore, it may not have been worth the cost of briefing it again, again, the compensatory damages were $20,000, if it wasn't going to end the whole case, because the release would have only applied to a narrow subset of the trademarks that they were accusing us of using before the Court. Alito, I take it from your introductory remarks that you do not agree with the restatement rule that, although the failure to raise a defense in a prior action generally does not preclude the raising of the defense in a subsequent action, there is an exception where prevailing on the defense in the second action would nullify the initial judgment or impair rights established in the initial action. Do you reject that rule? No, Your Honor, and that's a key point. As I said in my introduction, if this were a judgment enforcement action or if we were trying to collaterally attack the prior judgment, we would be barred. Well, I understood you to say that there would be an exception if it was an attack on the judgment, a collateral action attacking the judgment, or if it was the basis of a claim. But this goes further. It says that a defense may be barred in a subsequent action if it would have the effects that I mentioned. So do you agree with that or not? We agree with the restatement, but again, it supports us in this case because, to be clear, Marcell is getting and keeping all of the relief it got in the first action. It got the $300,000. It got the injunction it got. It got the declaration for that period of time. What we're talking about is subsequent conduct presenting new claims where they're trying to get additional relief and a broader injunction, a deprivation of property that we never had a chance to defend with regard to these claims. Kagan. But suppose the subsequent conduct were identical in all ways to the prior conduct, and I know you think that that's not true, that there are different marks involved and that the conduct has changed. But suppose that it were identical in all ways, it's just that it's after the prior judgment. So there was no – there were no damages collected for the subsequent conduct because it hadn't happened yet. In that case, could you have brought the defense? No. And the reason we could not have brought the defense is the only thing before the Court in the first action, the 2005 action, was the facts and circumstances at that particular period of time. A court could not – would be an improper advisory opinion to say, and, well, with regard to future conduct, that would be bad, too. The way courts deal with that is via injunctions. In other words, if the Court wanted to address and prevent the current conduct, it would have issued an injunction that pertained to the current conduct. Instead, the injunction that it issued was limited to use of get lucky or colorable limitations thereof, that they tried to make by making a motion for contempt earlier in this case in Martel I to try to have that injunction read broader, but they were denied. So if I understand what you're saying, in the case of identical subsequent conduct, if it violates the injunction, then you're out of luck. Correct. But if it does – if there's no injunction or it does not violate the injunction for some way – in some way, then you can do whatever you want. Is that correct? Well, you can do whatever you want subject to the fact you might get sued again. You have to have a, you know, you have to have a – No, I'm sorry. I'm – I – I – But you wouldn't be precluded. Yes. That is right. But that's consistent with, I think, the very unremarkable proposition that new subsequent conduct, subsequent infringing conduct is a new claim. Well, that's inconsistent with the restatement rule, so you really don't agree with the restatement rule. Your Honor, perhaps I am not fully understanding it, but – but my understanding of the restatement rule is based on the idea of – of attacking the previous action or upsetting the judgment. I think the proper restatement rule to be helpful here is the restatement of judgment section 18, which makes clear in section title merger that defenses that attempt to upset the judgment rendered are barred. Well, that's one – that's one section of the restatement that deals with this problem. And, of course, the restatement might not be right. It's not – you know, we don't have to accept it. But I have a question about interpreting the judgment in the 2005 action, which I think we have to do in order to come to grips with this case. It could be interpreted possibly in one of two ways. There is a seeming discrepancy between the final judgment and the injunction. The injunction applies only to get lucky, whereas the – you can read the judgment to apply to a lot of other brands as well – a lot of other marks as well. So my question is, is there a – does the district court's – the way the district court framed the injunction necessarily reflect its interpretation – let me back up – does the way the district court framed the injunction necessarily indicate the way it interpreted the jury's verdict? Or would there be grounds under trademark law for the district court to issue an injunction that is narrower than the jury's verdict? The – that was discussed in a well-reasoned opinion, obviously not binding on this one, where he said that because the declaration was phrased in the conjunctive, you couldn't – it would be sheer speculation to say that that meant that the jury found that it was just use of get lucky by its – that use of the word lucky, the name on our stores for 30 years, was infringing by itself. And we know that from how they tried the case, which is why the district court and of their brief, the focus of the case was not just on the use of get lucky, but on the use of get lucky causing confusion with – because of the commingling of words with lucky with get lucky. That was their argument to the jury. Alito, that's a plausible, maybe the best interpretation of the meaning of the box that the jury checked on the verdict sheet. But two things. All that was held, right, in Marcell 1 was that there wasn't a – there wasn't enough to show that the injunction had been violated and therefore not enough to hold – not enough for contempt holding. Am I right? That's what was held. Well, it held that, yes, that the contempt ruling by the district court in denying contempt who presided over the case and is in the best position to know what she was intending to enjoin, and knew that the closing argument to the jury was, I think it was at 852, the trial transcript was, but causing confusion is the use of get lucky with these other marks. Ginsburg. Can you explain how lucky, I think it was represented by other counsel, allowed that strange question that asked get lucky, lucky brand, any other use of the word lucky, strung them all together, and the jury, in order to find that get lucky had been used and infringed, would have to answer yes. How did you, as a judge, I assume, inform the attorney of the questions that would be asked on the special verdict sheet, right? I think that they all understood it because it was consistent by grouping them all together like that with the theory that the case was argued. They essentially had two claims. You can't use get lucky, those actual words, and it's also causing confusion to use get lucky with these other words. So actually, that language, that instruction, that grouping was pressed not by Lucky's counsel, but by Marcell's counsel, because that fit their theory of the case. And they can't now, having pressed that theory of the case and gotten the language that they wanted, now try to argue that it means something else. But I also am concerned, though, that we need to get back to the, with respect, with permission, with the legal issue of the problems with this new test that the Second Circuit has put forth, because it is a bad idea. It's a bad idea for at least four reasons. One, it will create uncertainty, because you'll never know whether you're going to be excused or not from a claim being released, from failing to press a defense, forgive me. Second, it's going to lead to new litigation. People are going to feel compelled to press defenses. And I can assure you that district court judges are not enamored of people who come in with a laundry list of affirmative defenses that need to be resolved. And then, even after that happens, then what happens? Then, let's say you don't raise a defense. Then there's an ancillary motion practice in proceeding where a judge has to consider what happened in the previous case that they may not have been involved with. It would also then lead to mischief by plaintiffs who might say, let's bring a small case, which arguably this case is, and then bring a bigger case after that. And it's also just fundamentally not fair. It's not symmetrical. It's not even-handed, because it lets a plaintiff bring new claims, but it prohibits a defendant from raising all the defenses that they may have to those claims. Just as these new claims did not exist at the time of the 2005 action, so too – and they could not have brought them. Well, we really could not have brought the defense to those claims, because those claims are new. And I think that was the reasoning of this Court way back in 1877 in Cromwell. Counsel, you raise a point about the lack of symmetry here that would be created. I suppose we could remedy that, couldn't we, and say that if a plaintiff had a claim in time 2 that was available, similar to the one in time 1, just as here, and could have brought a cause of action, but forgot to do so in time 1, it should be barred from doing so in time 2. Would that solve the asymmetry problem? I think, Your Honor, if I'm understanding your correction correctly, which you're really, as I hear it, talking about the ordinary application of claim preclusion, which means that – Well, no. It's a new claim, you would say, right, because it involves new facts, right, and new infringements. But, yes, there was a cause of action they could have brought, right? You know, a breach of contract claim rather than just a trademark claim. But maybe they shouldn't be allowed to bring that in time 2. Well, that would be another let's litigate everything rule, so that would be quite an extension of claim preclusion in another direction, but it would at least solve the asymmetry problem. Right, but to no good end. I mean, this was a – I mean, it really seemed like the Court in Marceau 2 was annoyed that prior counsel didn't raise this defense, and I can appreciate that. But that doesn't mean that this Court needs to reconfigure the entire law of claim and issue preclusion in this case in this country, and there's no reason to do it. Because as the reasons thought in Cromwell in this Court, in a very thoughtful opinion by Justice Field in 1877, you know, the Court took the time to survey exhaustively all prior law of what we now call issue and claim preclusion. And while he talked about demand instead of claim, he juxtaposed in his opinion for the Court the two types of preclusion that we deal with today. The idea that once you've litigated a case, you can't – you're foreclosed from raising defenses to undermine that case's resolution. But if it's something that you haven't litigated, that would not foreclose you in a subsequent case involving new claims. Kagan. Kagan. Could I go back and try to figure out some of what's going on between the parties? In your reply brief, you say, even disregarding the fact that these are – that we're dealing with a different time period, we're actually dealing with a different set of claims because you have stopped using the Get Lucky brand, so that the claims that the Respondent now has against you have nothing to do with Get Lucky. Is that what – That's correct, Justice Kagan. I mean, that would be a kind of narrow and easy way to solve this case if it were true and if it were not waived in any way. But why did you only bring that to our attention in – why did you only make that a central feature of your argument in the reply brief? Because that was sort of to our surprise, the focus of their – I mean, the key thing is that our friends did not defend or cite any cases saying a previous court has ever accepted the thinking of Marcell II, whereby a never-litigated defense can be precluded in an action involving new claims. Rather, they focused its brief on saying, well, these are actually old, old claims, and that's why we addressed it then. And we – the whole predicate of this case, the whole opinion that Marcell II is based on, was the court in Marcell II acknowledging and citing the decision of Judge LaValle in Marcell I that this was new claims because it involved a subsequent course of conduct. Once they raised it, we then properly responded it to in reply. And as we said in our reply brief, there's three reasons. I mean, the key thing is to decide the issue of law. But in terms of the new claim issue, I think this Court can easily dispose of that for three reasons. One, they argued exactly the contrary, arguing that these were new acts, new claims, new circumstances in Marcell I. So if there is an estoppel here, it's judicial estoppel to them in changing their position because of that. And then second, Judge LaValle's decision, not binding on this Court, but it was clearly right because it stood for the unremarkable proposition that subsequent acts create new claims. And that's also consistent with Assatec and Patent Law in this Court's accrual cases, like MGM v. Petrella in the copyright context, where each act of infringement is a new claim for accrual purposes. And then finally, yes, there is the factual point that Your Honors have been asking about, which is when the whole theory, admittedly, of the first case was about the juxtaposition of get lucky, the use of get lucky, and the juxtaposition of get lucky with other things causing confusion, in a new case, in a new period of time, not before the Court, not possibly before the Court, that admittedly did not use get lucky, that's a very different circumstance. Sotomayor, I'm sorry. Can you tell me what the theory is, what you think the 2005 settlement or 2003 settlement agreement means? Sure. Can you sort of – I can't tell whether you think it means that Marcell has no claims against Lucky Brand for using Lucky Brand, but you have claims against them for their using get lucky? No. All right. It doesn't mean that. What it means is what the district court held it to mean. It's a nice summary of it in its decision granting our motion to dismiss, which led to the appeal in Marcell 2. And what it means is that in exchange for $650,000, my client, Lucky, agreed not to use get lucky anymore, but that for any trademarks that it had registered or used prior to the date of the settlement agreement, which would include Lucky Brand, the name of our store, and other kinds of things, other enumerated things, any trademarks that used the word lucky prior to that date, all future claims would be extinguished. So in other words, what that would mean, and the benefit of the bargain that we're trying to achieve, is absolutely we can't use get lucky anymore. But under the principles of the policy of supporting settlement agreements, we should be allowed the benefit of our bargain and being able to have protection for our house mark and the other pre-May 2001 uses and registrations that they had. So the settlement agreement doesn't, it's not an offensive document. They can continue to use their sole registered trademark, get lucky, to their heart's content. The issue- Sotomayor So you can use Lucky Brand and any other trademark you had registered as of that date, to your heart's content. Exactly, Your Honor, and it's that benefit of the bargain that we're being deprived of, and Lucky, I mean, Marcell effectively got a partial windfall in the 2005 action. Most of that case was about get lucky, but if some small piece of it involved one of the released marks, they got some of that $20,000, went for that. But now they're trying to get a perpetual windfall and say that they get to bring, even though they didn't get an injunction, additional new claims when we are foreclosed for bringing a defense that was never fully litigated to judgment and would not be barred by issue preclusion. Your Honor, were you trying to ask a question? Yes, thank you. The other side likens this case to a judgment enforcement action. You've alluded to that. Just so we're clear, what makes something, in your view, a judgment enforcement action, and why doesn't this qualify? What makes something a judgment enforcement action is when they're trying to get the relief they had been previously been awarded. And the relief that they previously were awarded was the $300,000 and the injunction with regard to that we can't use get lucky or a colorable imitation of that. What this action is about is we want more money, we want a broader injunction. We don't want you to use anything with the ordinary English word lucky in it. You said before a judgment enforcement action and a collateral attack on a judgment. Do you view those as different things? They're really ‑‑ technically they're different, but they go to the same thing. Claim preclusion is all about the concept, as we know from Taylor v. Sturgill, is the modern word we use for part of race judicata. And so what that's about is the idea that once the action was decided, nobody can undo it. The plaintiff can't sue again and get additional relief. May I finish the statement? And the defendant is ‑‑ cannot be ‑‑ attack a judgment once obtained. Thank you, counsel. Mr. Kimberly. Thank you, Mr. Chief Justice, and may it please the Court. Imagine a dispute between two parties is resolved with a final judgment on the merits. Our position is that in any subsequent lawsuit between the same parties, just as the plaintiff is precluded from raising any claims springing from the same cause of action if those claims were available to it in the prior suit, so too the defendant is precluded from raising any defenses to that cause of action if those defenses were available to it in the prior suit. This rule is fair and symmetrical. It preserves judicial resources by discouraging repeat lawsuits, and it fosters reliance on final judgments. Now, Luckey's response to this, as I understand it over the last 25 minutes in its reply brief, is not really to deny the substance of our rule, but instead to deny that this case and the prior case involved the same cause of action. But that can't possibly be correct. Indeed, there could be no clearer example of two cases involving the same cause of action than one in which the second suit alleges post-judgment violations of the exact same legal rights that were settled by the final judgment in the first lawsuit, based on a course of conduct that is alleged to be a continuation of the exact same conduct as before. And that's exactly what Marcel alleges here. Now, Luckey says that these allegations are wrong and, in fact, that this case depends on different facts supporting different theories of trademark infringement. And there are two responses to this. The first is that Luckey is ignoring that this is an appeal from a motion to dismiss, meaning the allegations of the complaint have to be taken as true. And at paragraph 25 of the complaint reproduced at JA62, and this is one among many such examples, Marcel alleges plaintiffs can be, quote, ''Luckey continues to this day to use the Luckey brand marks in the identical manner that was found to be infringing upon plaintiffs' rights and interests in the first action.'' I don't think the Court has to look further than that. Now, if the Court does feel that it does need to look further than that, I think all it needs to do is look at the judgment. Roberts. Before we do that, it seems to me that perhaps the most serious difficulty with your case that cries out for an answer before getting to the judgment is that it does require counsel to put forth in the first case every conceivable defense that he or she might have. And I can't imagine a rule that would make sense. In other words, if you've got five defenses and you think three are really good, two, who knows, you still have to put in those other two if you want to ever be able to raise that defense again. And it's a particular problem in this area of the law because you're often dealing with ongoing disputes between two parties. Your Honor, that would be true only with respect to subsequent suits involving the same nucleus of operative fact, the same claims. It would not be true with respect to subsequent litigation between the parties on different causes of action. Ginsburg. I don't follow your argument about the same claim, because I thought everybody agrees that the claim that Marcell is bringing in the second action is not the same claim. It's a different claim, because it involves events that occurred after the judgment. So there's no claim preclusion. There's no claim preclusion in this case. The plaintiff is the one against whom claim preclusion operates, and there, I think, all agree claim preclusion is not an issue. There is this new idea of defense preclusion, but there surely is not claim preclusion. I think we can agree on that. The first action deals with a certain period of time and certain conduct within that period of time. The second action deals with conduct after the first case is over, and it is a different claim. I thought that it is clear that there is no claim preclusion in this case. Your Honor, it is clear that there is no claim preclusion in this case, but it is not because they are different causes of action. There is no question that if the claims under the assertion of damages, the facts underlying. Ginsburg. But a cause of action means a claim for relief. A cause of action is a claim. And if you take the Federal rules, Federal rules refer never to cause of action. The expression is claim for relief. So call it a claim, call it a cause of action, call it a common nucleus of operative fact. That is, I think, the unit that matters for res judicata purposes. There is no question that if the facts giving rise to these claims had arisen pre-judgment, they would be precluded precisely because they are – precisely because they do arise from a common nucleus of operative fact. The reason that claim preclusion does not apply in this case and that Marcell may prosecute its post-judgment claims is not because they arise from a different nucleus of operative fact.  But how do they not arise from a different nucleus of operative fact? I mean, there are two problems. One problem is the one that Justice Ginsburg raised. It happened afterward. The facts have – are different because it's a different time period. So it's a different transaction or occurrence. It's a different nucleus of operative fact. However you want to phrase the – the test, it would seem you're no longer in the same world. And then even more than that, even if you said, well, if everything else is identical and only the timing has changed, maybe we can still say it's the same claim. Here, everything else is not identical because Lucky has stopped using Get Lucky. Right. It's continuing to use its Lucky brand, and the – and the reference you made to your complaint says it's continuing to use its Lucky brand in the same way, but it's not using Get Lucky. And that was a core part of the operative facts that gave rise to the first claim, isn't it? So, yes, as to one bucket of the claims. It was factually relevant to the – a second bucket of claims, and it would be factually relevant in this case. And there were a few parts to your point there. Let me take on the first about different time periods. The point here is that this was a continuing course of conduct. So the litigation in 2005 covered a wide range of time, up to the time of the final judgment in May 2010. Liability in this case is alleged to commence the day after the judgment in June 2010. So it isn't as though this is – this is just sort of a different point on the spectrum of a continuing course of conduct. So the facts now are no different than were the facts between two different days within the period of time that was the case. Except for the fact, counsel, that if it were identical, you'd just go and force the judgment. But you tried that and failed here. So I guess I'm stuck where Justice Kagan and Justice Ginsburg are in that this looks like a different claim. And I think you've actually candidly acknowledged that this is a different claim, and it isn't precluded by claim preclusion. It's got to be something else. And the something else – I think you hinted on page 20 of your brief, you talk about a defendant who loses in one lawsuit may not raise in a subsequent lawsuit involving the same cause of action, which I think of as a legal theory – that's how I think of it, at least, as opposed to a claim which involves the facts – a defense that was available in the first lawsuit, okay? So I wonder, well, you know, that's a little asymmetrical, right? The defense – the defendant loses a defense. Why wouldn't the plaintiff also lose the cause of action? And wouldn't we then be inviting the same sorts of inefficiencies that the Chief Justice was speaking of earlier, requiring a plaintiff to bring every cause of action in a $20,000 lawsuit involving a different set of facts, that it might bring in a very similar cause of action later in time, too? So I want to be sure to come back to Justice Kagan's question. Well, I think we're asking the same sort of thing from – Well, let me answer just first as to this question about, well, maybe you wouldn't want to litigate all your defenses in a case involving a small amount in controversy. That may be true that – And the same thing is true for plaintiffs, though. You might not want to bring all your causes of action in the first lawsuit. You might keep it simple when it's a small lawsuit. You might throw in more causes of action in a later lawsuit and it involves more money, for example, right? Well, that's exactly right. But claim preclusion recognizes that when – You wouldn't want that to be barred. That would be a bad thing if that were barred, right? If a plaintiff were barred from raising claims arising from a common nucleus of operative fact – Bringing a new cause of action, a new legal theory in time, too, for a similar but different later – No, of course, Your Honor. But of course, I have to resist that these claims don't concern a common nucleus of operative fact. And so let me get to that in my – in the second part of my answer to your question, Justice Kagan. There were two categories of claims in this case. There were claims concerning Luckey's use of Get Luckey and there were claims concerning the likelihood of confusion between the Luckey brand marks and Marcell's Get Luckey mark. The claims concerning Get Luckey were the claim about the settlement agreement, which had – which was supposed to prevent Luckey from continuing to use Get Luckey, and trademark infringement. As to those claims, they were resolved interlocutorily by the court – the district court's sanctions order. That order granted partial summary judgment on each of Marcell's claims insofar as Luckey was using the designation Get Luckey in direct violation of the settlement agreement and Marcell's trademark rights. The trial in the case took place more than a year after that, and the focus of the Luckey brand marks and the Get Luckey mark were confusingly similar. That was the only issue as to liability that was left in the case after the district court entered partial summary judgment. And I would say at the same time that the court entered partial summary judgment, it entered the permanent injunction on the use of Get Luckey. The permanent injunction concerned only the use of Get Luckey, which is why, Justice Gorsuch, we could not have brought this as a judgment enforcement action. Breyer. Couldn't have brought it, but I don't – I don't understand what our – we're supposed to decide. I thought that we took this case because, assuming that the law is what it seems to have always been, that where A sues B and the suit's over, then A sues B again for identical conduct which took place after the suit was over. I thought in 1961, in Al Sachs's procedure class, and things may have changed, that I learned that the second suit is a new suit, and therefore people can raise claims, but they are not collaterally stopped on. Because they – is that right? What? I mean, I thought Justice Ginsburg said exactly that. And she said that, and it took her about a minute, and it took Al Sachs, I think, about an hour, because he doesn't – but there we are. And you started by saying that, so I thought, well, I agree with that. But I thought – I thought that the case was about the Second Circuit trying to have a new rule, that even if the facts are just – even if the law is just what I said it was and just what she said it was, sometimes a defense is precluded when it wasn't raised before if, A, same parties, same act adjudicated before, it could have been asserted before, and the district court concludes that preclusion is appropriate because efficiency concerns outweigh any unfairness to the party. So I thought we were here to decide whether that was the law, and I thought that they are the only ones to have ever said that, and I don't know where they got it from. And I couldn't – my law clerk couldn't find any case that ever said that, and he couldn't find that the restatement ever said that, so where have I been wrong? I mean, I mean, I guess it could become the law, but I haven't heard anyone argue that it should be. I haven't heard anyone defending the Second Circuit. I haven't read anyone who defended the Second Circuit. Okay, you get my point. Yes, and, Your Honor, I guess what I would say is I think the Second Circuit's test is exactly right in every particular exception. I'm sure you do. Yes, except that it could have been more clear, I think, that the first case and the second case have to involve the same – a common nucleus of operative fact, such as the claims raised in the Second Circuit. But I'm not interested so much in that as I am in where did that come from. Are you the first person to have made that up, and you convinced the Second Circuit, or are there others who have, in the history of the law, have said it, and – which would help me? Your Honor, we recite them at length in our brief. The idea that claim preclusion has a mirror image that applies to preclude defendants from raising defenses is very well settled in a fact. That's not my point. My point is I just read you what they said, and that was in a case where there wasn't claim preclusion. They're talking about cases where there isn't claim preclusion, I thought. But they're talking about cases where there is claim preclusion. I don't know what the point is. I have to go back to the whole thing. I thought that's what I read you was talking about cases where there isn't claim preclusion. Am I right or not? I think defense preclusion could only apply in a circumstance where claim preclusion didn't, because if claim preclusion applied, of course, the case wouldn't get off the ground. So I am right. It applies only in a case where there is not claim preclusion. That's what we're talking about. But – but – I think I don't – I don't have a case to point you particularly to that point. But I should say that the reason that claim preclusion doesn't apply in the second case has to be not that it is a new claim, but that the claim was simply unavailable in the first – in the first case. Alito, isn't there a body of law that says that the fact that the facts are different is not necessarily dispositive of this issue? So if you have a series of lawsuits about exactly the same thing, let's say failure to pay under an installment contract or failure to pay rent, and it comes up month after month, the failure to raise the defense in one of those prior actions can bar the raising of the defense in the later action. So the fact that it's a different period of time is not necessarily dispositive if – unless we reject that body of law. That's right, Your Honor. And the reason is straightforward. In the first suit where the – where the landlord sues the tenant on the meaning and enforceability of the contract, and it results in a final judgment that settles the landlord's right – landlord's rights under that contract, the landlord ought to be entitled to rely on that – on that judgment. All I would want is a couple of cases that I should read. I don't read every case in the brief. Don't tell anyone I said that. But the – the – the – I – I – what cases should I read to say that where you bring an identical – Right. So I would start with City of Beloit. This is a case from 1968. It predates the Davis case on which my friend on the other side relies. And it – it stands for exactly this proposition. It does so in the context of a series of negotiable instruments, but there was an initial suit that settled the party's rights on when later negotiable instruments came due, the plaintiff sued again, the defendant raised a new defense, and this Court said in City of Beloit that that defense was precluded. Well, that was because it was all from the same issue, meaning that the most – but we have a contrary case that says when it was two different issues, then you don't have it. Not issues, Your Honor. I think causes of action, and I think that's exactly – No, no, no. Now you're trying to confuse things. Beloit involved bonds that were – that came from the same issuing body at the same time. That was Davis as well, Your Honor. Davis and Beloit. Davis, but it was different bonds, not from the same issue. It was the same bonds from the same issue, Your Honor. But we get two different outcomes. And for reasons unclear to me, the Court said in Davis when you're suing on two different negotiable instruments, you're suing on two different causes of action. The city – the court in Beloit, in the city of Beloit, said, well, when you're suing on two different negotiable instruments – So let me take it to this case. You sued in 2005 for their use of Get Lucky with Lucky Brands. In 2011, you're suing simply for using Lucky Brands. To the extent that the case turned in 2005 in the combined confusion of the use of Get Lucky with Lucky Brands – because I read your complaint, and it's always in the conjunctive, both of them together. But now it's, in my mind, a different cause of action because you're saying it's the use of Lucky Brands without Get Lucky. So this is the completion of my answer to Justice Kagan's original question, and it's this. To understand what was at issue in the first case, I think you're right, Your Honor, you have to look at the complaints. And in particular, what I would do is look at the counts of the complaints that were reduced to judgment. So I point the Court to paragraph 2 on JA206. This is where – this is reading the final judgment. That paragraph reads, And let me pause and first say, of course, there was Lucky's complaint and Marcell's counter complaints. There were two complaints. To understand what the suit was about, what the nucleus of relevant facts there was, you have to look at both. As to Lucky's claims against Marcell, the jury found as follows, and this is reduced to the final judgment. It says, This is the jury saying, we agree with Lucky that the marks are confusingly similar. The second half of that paragraph then explains that Marcell is not liable because its mark is the senior mark. So now, what did Lucky allege in its first, second, and sixth claims? And it's crystal clear. This is docket 77-2 in the district court docket in this case. The focus of all of these claims was a confusing similarity between the two marks. And so I'll just read as one example the sixth claim for relief. This is paragraph 99 of Lucky's operative complaint. It tells that, Marcell and its licensee's use of marks confusingly similar to the Lucky family of marks has caused and continues to cause confusion as to the source of Marcell's and its licensee's products, in turn permitting them to pass off their products to the general public as those originating from Lucky. Sotomayor So why did you end up both with a preliminary injunction and a permanent final injunction that only enjoined them from using Get Lucky? I know you – there is certainly loose language in the final judgment making it unclear what it was aimed at, except for the permanent injunction. It seems almost natural to me that if the intent was to challenge and if the district court understood you to be challenging the Lucky brand trademarks, that it would have enjoined the use of all of them. And the answer is that the permanent – the only permanent injunction in this case was the permanent injunction that was entered interlocutorily one year before the trial in this case. It was the injunction entered as a sanction because Lucky had misrepresented to the court in Marcell that it was no longer using Get Lucky. Sotomayor But I don't see the language in the final judgment. The only thing you ended up with is an injunction against the use of Get Lucky. And we are not here enforcing the injunction. I want to be very clear about that. We are here enforcing the – Roberts Just to be clear about that, I'm sorry to interrupt, but you're not enforcing the injunction and you're not seeking to enforce the final judgment in the first suit either. Jaffer Only in the sense that one would seek to enforce a declaratory judgment are we doing so. We are seeking to enforce the rights and interests that were settled by the Constitution. Scalia This is not a judgment enforcement action, counsel, is it? Jaffer I would not call it a judgment enforcement action in the sense that a claim is reduced to judgment and they're not paying on the judgment. That's right. But as Justice Alito was explaining, the restatement recognizes that really there are two categories of subsequent cases. There can be subsequent cases where the parties are seeking to actually enforce the judgment and one where they are simply seeking to seek further enforcement of the rights and interests settled by and underlying the final judgment in the prior case. Sotomayor Well, how does this undermine the prior judgment? Jaffer It undermines the rights and interests settled by the final judgment from the 2005 Act. Alito What were those rights? Was it a right to have them not use any brand that contains them? What right was established? Jaffer It was the 12 marks. It was the parties' relationship to one another with respect to the 12 Lucky brand marks and the one Marcell Fashions mark that were at issue in the case. And the jury's determination that Lucky's use of those marks, that those marks were confusingly similar to Marcell's mark, and therefore that Lucky's use of those marks was infringement on a reverse confusion theory of liability. Sotomayor Of the 12 marks, yes. Alito Of each and every one of the 12. Then I come back to this question that I asked opposing counsel. Why – how can you account for the discrepancy between that understanding of the judgment and the injunction? Why is the injunction so much narrower than that? Jaffer Well, again, the injunction was entered by the district court as a sanction. This final judgment – Ginsburg And why didn't you ask for an injunction if you say what was infringing was not simply Get Lucky, but Lucky brand, anything with using the word Lucky. You should have asked for an injunction. Jaffer And, Your Honor, this was an issue that came up after the jury entered its verdict. The final judgment that you see is a jointly stipulated final judgment that the parties negotiated. In the course of that negotiation, counsel for Marcell suggested that we ought to enter a permanent injunction against Lucky's use of the Get Lucky marks. It was clear that that negotiation wasn't going to result in an agreement. And Marcell then agreed to drop the issue. But what this Court said in Lawler is that a party's decision not to pursue a permanent injunction in the face of a judgment in its favor cannot operate as effectively a license for the party – the losing defendant to continue on with what it was doing before without any risk of having sued again. Sotomayor, is there any language in the final judgment that says you can't – with or without an injunction, you can't use Lucky brand? Jaffer It's – as I was saying, paragraph 2, where Sotomayor, give me a – where are you in the Joint Appendix? Jaffer JA-206. And I'll read it one more time. It says, Ally's use of Get Lucky – and Ally is Marcell's licensee – Ally's use of Get Lucky is in violation of Lucky brand parties, and then the list of the 12 marks at issue, pursuant to Lucky brand parties' first, second, and sixth claims. The first, second, and sixth claims allege, just as I read to the Court earlier, this is paragraph 74, paragraph 79, paragraph 99 of Lucky's complaint, where Lucky alleges exactly the theory of confusion that I just described, that Breyer But all that the judgment is reduced to is concerns Get Lucky. That's it. Jaffer No, that's incorrect. I mean, I'm looking at – okay. I suppose I'm – what am I misreading here? Get Lucky is capitalized and referenced three times in that paragraph. Jaffer Which paragraph are you talking about? The one you were just reading us, counsel. Jaffer Well, but that's the explanation of why Marcell isn't liable, because the Get Lucky mark, although it's confusingly similar to Marcell's marks, the Get Lucky mark is the senior mark. So the second half of that paragraph simply explains why, despite the confusing similarity between the marks, Marcell is not liable. Breyer If you were right, why didn't you just go seek a judgment enforcement action? Why didn't you go back to the Court and say this defies your judgment, Your Honor? Jaffer Because a – we take this judgment in this respect to take basically the form of a declaratory judgment. One doesn't get to return to a court upon obtaining a declaratory judgment attempting to convert it into an injunction. Ginsburg Well, you can apply at the foot of a declaratory judgment for further relief. A declaratory judgment is a nice action. You're going to deal with your adversary and you're going to get the declaration. But a declaratory judgment can be followed up. Jaffer It can. And more typically, Your Honor, it's followed up by the filing of a new lawsuit that alleges that despite the declaration of rights, the defendant has continued on with whatever it is the declaratory judgment said they didn't have a right to do. That's precisely what we found. Ginsburg Can you explain one other aspect of this to me? I thought that this settlement agreement, 2003 settlement agreement, said, Marcell, you can go after Lucky. Lucky has undertaken not to use Get Lucky anymore. Get Lucky is off the table. On the other hand, Marcell is releasing Lucky of liability for using Lucky Brand. So Lucky Brand is Lucky's trademark and Marcell says it's not going to go after use of Lucky Brand. And then we get this post-settlement where Marcell is saying, yes, we're going to go after Lucky Brand, even though in the settlement we said we wouldn't. Jaffer And, Your Honor, the explanation for this is twofold. The first is Marcell became aware that Lucky was violating the terms of the settlement agreement and that it was continuing to use the Get Lucky designation. And two examples of this after the settlement agreement appear on page 8 of our red brief. Its theory then became, and this is where, Justice Kagan, you raised the potential factual distinctions between the cases. They're not actually distinctions. Our theory became, one, if you're going to confirm Lucky sued Marcell on a basis that was also released in the 2003 suit, Lucky Marcell then filed counterclaims. And part of the theory of the counterclaims was if you're mixing the two marks together, then the facts that underlie the settlement before are no longer true and, indeed, the public may now be confused into thinking that Get Lucky, in fact, belongs to Lucky Brand. We would make those same factual arguments in this case. Kagan Can I go back to the law for a second? Because here's where I really think we are in this case. Second Circuit issues this decision. And as Justice Breyer said, this decision, we've never really seen anything like this because the Second Circuit said that there was defense preclusion even in the context of new claims. You admitted that yourself, that the Second Circuit wasn't clear enough about the fact that it couldn't be a new claim. That's because the Second Circuit never said it had to be a new claim. So the Second Circuit's ruling goes far beyond that and applies to new claims. So now you think, well, that's got to be wrong. So we have to limit it to old claims. So I'll just, you know, we'll say that this is the old claim. It's the same transaction or occurrence. But if it were the same transaction or occurrence, you couldn't bring your second suit. Now then you say, yes, you can because I can bring a second suit even if it is the same transaction or occurrence because I didn't have the opportunity to bring it before. But nobody's ever heard of that. The reason that you can bring a second suit is because this is a different transaction or occurrence. Shaheener, Your Honor, in fact, the arguments that you just described were at the heart of our arguments in the first case. And if I would, I'd point the Court just to two footnotes from the Court's, the Second Circuit's decision in this case. It's footnote 7 at appendix page, Petition Appendix page 18 to 19, where the Court says that this action and the prior action, quote, surround related transactions or occurrences. It's saying that this is the same cause of action. Footnote 10 on page 10. Ginsburg. Related is insane. Shaheener, Your Honor, that is, in fact, a statement. The statement from Restatement Section 24 is connected, but I think related and connected are substantively the same. And the Court then, at paragraph, excuse me, on Petition Appendix 21 in footnote 10, may I finish, explains why its decision in the first case, in the first appeal and in this appeal are consistent. And it says, Your Honor, exactly what you just said, that the reason that the claims here are permitted is because they weren't available in the first suit, not because there are different claims in the sense that they arise from a different nucleus of operative fact, because they can't. The allegations here is it's a continuing course of conduct. And the only reason they were permissible is because, in fact, they were unavailable. That is clear on the face of the opinion, and I'm we think applying that opinion requires affirmation. Thank you. Roberts. Thank you, counsel. Five minutes. Ms. Sindali. Thank you. Two series of points, one relating to the question presented on the rule of law, the new rule of law, and one relating to the new claim argument. One of the striking things about Marcell's argument is that there was no defense of the basic principle, as Justice Breyer was saying, that you can have a new claim in a case where there is a new claim, a previously unlitigated, unresolved defense can be excluded. But he says, correctly, the two cases, one was the one Justice Alito mentioned, the landlord case, and the other was the bond case. And in both cases, you understand, you probably read those cases. Right. And so let's talk. What's your answer to that? Right. But let's talk about that. First, it shouldn't be forgotten that page 17 of their brief, they say that a preclusion of a defense requires that the causes of action be the same. That's basic civil procedure. I learned that in Professor Arthur Miller's class. The case that they cited then was City of Beloit. City of Beloit, as Justice Sotomayor said, is our case, because that was a case when there was a judgment that the city had to pay. It then brought a suit in equity to try to get from out of that judgment. That is not a case involving the facts here of a new claim. And moreover, to the extent that there's loose remarks going in that direction in that case, that was specifically dealt with by the majority opinion in Cromwell, which surveyed all the law up to that point. And specifically, while it didn't cite City of Beloit by name, it specifically explained the way Henderson v. Henderson, which was the main case City of Beloit relied on, saying Henderson v. Henderson was also a collateral attack case and doesn't rely on it. Later that term, in another opinion by Justice Field, Rogers v. Brown – excuse me, Davis v. Brown, City of Beloit, excuse me, and Cromwell was only cited by the defense, which is telling. Breyer. What about the rent? The rent? The landlord sues the tenant for rent on a lease and wins. And then later on, the tenant doesn't pay again, so he sues him again on the lease. And this time, the defendant wants to say the lease is invalid, and the court said, no, you can't, because you should have said that before. Because to the extent that that case is a new claim, they should be able to bring that. If there's an ongoing course of conduct, then – and if you were made whole from the first nonviolent case. No, that isn't the question, because everybody agrees it's a new course of conduct. But this was a defense, and they said you can't raise the defense, and then Wright and Miller is a little worried about that. They say, well, this is a question of estoppel, and so that seemed like a point on his side. What about those cases? Well, none of the cases, none of the cases cited in their brief are these facts. With regard to the Red case, if it's – if it means what was just said, then it's just wrong and not consistent with law. And all – Sotomayor, let's assume that they had actually litigated, you had actually litigated whether the use of Lucky brand trademarks without the use of Get Lucky was an infringement on the superior Get Lucky mark. Let's assume the court had said it's an infringement for you to do that. No permanent injunction. We're just going to give damages. Then there's now a new lawsuit that says you're continuing, after the old one, to use the Lucky brand trademarks in the same way. That's how they're pitching this to us, okay? Now you should be precluded because you had a full and fair opportunity to raise the settlement agreement as your right to use the Lucky brands. You didn't. Why should you raise it now? I think that that's the case that they say this is. Right. And assuming that were the case, you had a full and fair opportunity to litigate your use of Lucky brands without Get Lucky, and the jury found that your use was an infringement, how could you then defend this case? May I answer? Yes. Well, you would defend it because the case sought subsequent relief for subsequent infringements where you would be allowed to present new defenses to that different period of time. If the absence of a forward-looking injunction, it's a new case. Future facts could not have been before the court. And that's the answer. Thank you, counsel. The case is submitted.